Come on up. Case number 22-11922, Julia Hopple v. The Joint Commission on Accreditation of Healthcare Organizations. Take your time. We're not in a hurry. You can start whenever you're ready. Good morning, Your Honors. Annabel Majeski on behalf of Ms. Hopple. Morning. You already know that I've reserved time for rebuttal, so I don't need to ask. May it please the court. Basically, we're here because Ms. Hopple has filed an ADA claim against the Joint Commission, and first I'd like to say as a generic update that a dispute as to liability or as to whether a function is essential precludes summary judgment, and this court is so held in Maseo v. Color Resolution 8-746-F3-1264, 2014. First, Ms. Hopple proved that she has a disability according to the ADA because she has a physical limitation as to walking and a record of that impairment, and she was supported her disability with letters from her doctor saying that if she has to sit for prolonged periods of time, she becomes stiff, which affects her ability to walk, and then she herself testified as to two separate incidents, one at the Phoenix airport and one at LAX, where she had trouble walking after being on the plane from the east coast to the west coast, and she needed assistance to get to the baggage claim, and then another time she needed assistance to go out to the rental apartment. I speak only for myself, but the district court ruled that there was enough evidence in the summary judgment record to get to a jury with regards to whether or not she had a disability, and I think the district court got that right based upon what I read, but I think for me the critical issue of whether or not nationwide travel is an essential function of her position or job, and everything seems, almost everything seems to fall or rise on the answer to that question. I agree, your honor. I was just kind of doing a little housekeeping just in case that whether she was disabled. No, I understand why you did it because the joint commission has argued alternatively that she doesn't have a disability, so I completely understand. Yes, your honor. My point is, for me at least personally, that's the difficult or more difficult issue in the case, which is, you know, why is it that nationwide travel is not an essential function of her position as a surveyor? I agree with you, your honor, that that is the crux of the matter here. If nationwide travel is an essential function, then she is not a qualified individual because she can't travel nationwide without an accommodation. So the other thing is, if it's not, or if there's some of the factors favor the joint commission and some of the factors favor Ms. Hoppell, then it should go to a jury because that is a question in fact as to whether nationwide travel is an essential function of her job to survey home care units. The main, of the relevant factors, we have that the first one is what the job description is, and that seems to be, that one is not dispositive, but it is given substantial weight when you are assessing whether the function is essential. And in this case, the job description doesn't necessarily say in so many words that you have nationwide travel is required. What it says is that they have health care organizations throughout the United States that they survey, and that the principal duties and responsibilities is extensive travel, and and in all kinds of weather. So that doesn't necessarily mean that every single surveyor is going to be, have to travel to every single health organization in, throughout the United States. But as a matter of fact, is there anything in the record that indicates that there were any health care providers other than on the six month temporary slots who did travel to every, you know, across the entire United States? No, there was just one other person that also had a six month accommodation. I think his name was Mr. Diaz. But other than that, there was no evidence one way or the other that people did not have to travel all the way across the country. It just seems that if they had, if the surveyors had asked Miss Hill, or they had let Miss Hill know, I'm going to be at my daughter's house in Florida for the winter, that then Miss Hill would sort of take that into consideration and to sort of give them surveys that were in that general area. But it wasn't a policy or it wasn't a for sure thing all the time. What about the evidence that there weren't enough sites to visit that were in two of the, you know, if you leave out the California district, right? There weren't enough sites to visit year round in those other two. What about that evidence? I mean, in the eastern and central time zones. Not to be confused, sometimes there was some confusion about whether she was being assigned only to the Midwest and all, but I think that sort of cleared up. And I think it's just known that she had asked for central and eastern, and she was being tried to be accommodated to that, including actually one time that she went to Texas. Right. So what about the evidence that there weren't enough sites to visit in eastern and central to keep her busy for the whole time? And that they had to, they had to go to, they had to put her in some in the western area, because they ran out of sites to have visited. And so what they wound up doing during the six months was pulling forward some of the visits, some of the site visits, so they would be significantly earlier than the clients would have liked, because they wanted to get the benefit of the entire three-year period. Yes, Your Honor. That was the only difficulty that they said they had in accommodating her, was that even though Mr., what's his name, Wayne, the supervisor, he testified that, yes, California was their busiest area, but they also, Texas was very busy, Michigan was very busy, Florida was very busy, Pennsylvania was very busy. So there were almost as many surveys in the eastern part of the United States. Well, maybe I misunderstood the record, because my understanding of the record was that although there were those other surveys, and there were lots of surveys in other places, that at certain times of the year, first of all, the bulk of the business was in California, and that at certain times of the year, there was nothing that was in those other two areas to send her to. But maybe I misunderstood that. I mean. My understanding, Your Honor, was that she, since the surveyors, what they do is they put in and say, all right, in this month, these are the two weeks that I want. And then Ms. Hill, who's the one that schedules people, she would go and she would see what surveys were coming due on those two weeks, and then she would, you know, allocate those surveys. What she found was that sometimes, the weeks that Ms. Hoppell had asked for, she did not have a survey for that week. And so then she was bringing forward, Your Honor's right, she was bringing forward surveys that weren't yet due. But she did also testify that bringing surveys forward two months was not unusual, that that wasn't, you know, that wasn't a difficulty, that that was done. She mentioned that it was bringing them three or more months forward that the health organizations then complained, because they, in their mind, they were getting gypped out of three months of their three-year survey time. Can I ask you a broader question? Yes, Your Honor. If the customer base or the joint commission was nationwide, why isn't it a reasonable assumption inference that the joint commission surveys are expected to travel nationwide? Maybe not all the time, but at least some of the time, for example, that 90% of the joint commission's customers were on the central and eastern time zones. I could see an argument that nationwide travel is not an essential function, because if you only, if you have 100 customers, to use a round number, and you have only 10 of them on the west coast, right, on the Pacific time zone, and 90 of them are central and eastern, I can understand an argument that nationwide travel is not an essential function of the job, because you only have a limited number of trips out west. The great majority are east and central, so that's where you're expected to travel all the time. But if the customer base is dispersed across the entire country, why wouldn't the company think that its surveyors had to be ready to go all over the place? They might expect that, but that's not the same as saying that that is an essential function. Why wouldn't it be an essential function if that's where the customer base is? Well, in this case, I think, instead of a small majority there, and a small percentage in one place and a large percentage in another, even though, yes, they were very busy in California, but in the eastern half of the United States was almost, let's say, 60-40. So in that case, you would be able to expect that you could not have to travel out west, especially if, once you've developed a disability, that impaired you. What we're dealing with here is the fact, I'm funneled, your honor. That's okay, you can finish answering the question. What we have here is the fact that, I lost my train of thought. That's okay, you were talking about the 60-40 split. Yes, so we're saying in that case, there's plenty of surveys that are available on the side of the United States where she needs the accommodation. Because what happened was, to go back, I just want to touch on hardship in case, so I don't lose my argument for that was found to be a hardship, but that's not the same as saying it was difficult. I thought the district court didn't reach undue hardship. I thought the court did not reach undue hardship. Right, but the joint commission argued that. Sure, that's their position, right? I understand that. So I just wanted to make sure I don't lose the chance to address that if I need to. No problem. The other, well, I'll save my time for you. Okay, thank you very much. If I've answered your question. You have, thank you very much. You've got five minutes left when you come back up. Mr. Koggenauer, did I pronounce it correctly? You did, your honor, thank you. I wasn't very good with the phonetic effort, but Koggenauer is the proper pronunciation. Stephanie does the best she can to keep me straight, but I don't often get it right. It is said in any number of ways, so thank you for that. And good morning to your honors. An honor to be here from Detroit, Michigan on behalf of the Joint Commission on Accreditation of Healthcare Organizations. And I will jump right into the issue that the court focused on, which is whether or not nationwide travel is an essential job function. I think counsel has agreed and the court understands that the Americans with Disabilities Act does not require an employer to reallocate essential job functions. And if the accommodation doesn't allow someone to do an essential job function, it's not required under that act. And we believe very strongly the evidence showed, undisputed evidence showed, that nationwide travel is indeed an essential job function. First, as Judge Jordan mentioned, I mean, a large number of our customers, our clients, are based in California and other western states or states within the mountain time zone. And a tremendous number of trips are made there each year, including by the plaintiff. Nearly half of her assignments over a three-year period were to the western jurisdictions. And we also submitted on the record, which was undisputed, the travel logs of other surveyors. And if you go right down the factors that this court has applied and the federal regulations apply for determining essential judgment, each one of the relevant factors supports that conclusion. First is the employer's judgment. There's no dispute on the record that all of the human resources personnel, the field director, believe that nationwide travel was essential. Plaintiff testified she understood that. Second is the job description. Both of those two items are given not controlling weight, sorry, substantial weight. And the very first sentence says, this job requires travel throughout the United States. And there are other portions that talk about travel extensively required. So basically, where is that language? A very first sentence of the job description, I don't have the job description in front of me, but it says it's not in the, it's interesting, it's not in the essential, there's a section on essential functions. It's not in there. It's the very first sentence of the job description. This job requires, I'm paraphrasing. This is a field representatives with minimal immediate direction or supervision survey and or review healthcare organizations throughout the United States. Is that what you're referring to? Yes, it is, your honor. Thank you. It doesn't say travel throughout the United States. Well, right. I mean, you have played devil's advocate. An employer could decide to allocate its resources in a certain way. It were whereby nationwide travel is not required. So if you work for the organization and you live in the Eastern and Central time zones, that's where you travel. If you work for the organization and you live in the mountain and Pacific time zones, that's where you travel because it saves the joint commission money. Cross-country trips are more expensive. We don't want to pay that going to go to New York. You're going to go to Philadelphia. You're going to go to Charlotte, et cetera, et cetera. You may even go to Chicago, but that's where you generally stop. And if you live in California, you're not crisscrossing to go to Key West, Florida. So, you know, saying that you need to do this nationwide doesn't really mean nationwide travel for all surveyors. Well, in this case, it did. I understand you're saying in some other business model, they could choose a different model, but that's not the model this business chose as the best way. And again, employer judgment, the court perhaps has a different perspective, but the court cases have instructed us to look at what is the employer's judgment on the best way to slice that reasons that everyone should be able to travel nationwide. And there are a variety of reasons for that. For one thing, it would impose or could impose a burden on other surveyors if they have to make those cross-country trips. And there's also scheduling difficulties that were discussed earlier. If you're limited to a certain number of customers in a certain geographic area, and also remember the plaintiff was only a .46 full-time equivalent, so she only was working two weeks a month, so there was a limited time to match the available surveys with her schedule. And it was undisputed on the record that multiple surveys had to be pulled forward in order to And the other thing, what about the plaintiff's argument that even though multiple surveys had to be pulled forward, it was not a problem to pull them forward two months, and that's what we're essentially talking about. Well, first of all, several of those surveys were pulled forward more than two months, so testified Ms. Hill. And I don't think Ms. Hill said precisely that. I think she said that there were customers that were, I don't know if the word was disgruntled, but that were not pleased with the fact these surveys were being pulled forward. So I think the record in fact shows some were pulled forward for her in this six-month window more than two months, and that was a problem. And the customer is not getting the benefit of the full three years certification in that scenario, and so found the district court judge that that indeed favored a finding of that this was an essential function. Does the record contain evidence about how many surveyors the Joint Task Force employs? I think it does, but those are talked about gross numbers. They're not all eligible to travel to all of our customers. She was a home health surveyor, so there's a slice or a percentage that can do that, and there are also certifications. I'm not sure the record shows exactly how many other surveyors had the same qualifications and certifications as she did, and that's part of the puzzle and the difficulty of scheduling. Does it have a ballpark number on that? I don't. The record doesn't contain that. To my recollection. But what the record does show, and one of the other factors that this court is to consider, is the amount of time spent on this duty in evaluating whether it was an essential function. And we went through in the brief fully over those three years before she retired, it was nearly 50% of her time, and it was similar for many other employees, and those are the other two factors, the work experience of past employees and of current employees, and the record is replete with substantial time spent traveling, California in particular, but other western jurisdictions as well. And so I think every single factor that was relevant, there's no collective bargaining agreement, so there's no labor issue, but the other six factors, every one of them favored a finding that this was an essential job function, and the plaintiff did not even brief it to the district court. They briefed it here in the appellate court, but we made the argument in district court, they did not brief in response to that argument, we argued that it was that they had basically waived that issue, nevertheless we're here, I think it's appropriate for the court to look at it, but I think the factors are very strongly in favor that this is an essential function. Basically if you cut away the legal jargon, she was asking to get out of doing half of her job, what amounted to half of her job, said I don't want to do that anymore, I want to stay here in this geographic region, and that's I think not consistent with the intent of the Americans with Disabilities Act, to reallocate and restructure a position so that you're removing a substantial part of what you do, and in this case, it's a little similar to the regular attendance cases, I mean you have to be there to do your job, you have to get there in order to do these surveys, they are on site, they're not remote, there's no way to do this job other than being there, and so it's essential that you be there, and we believe the district court properly made that finding. As to I understand where the court's going, we did brief and argue, and I adhere to the position as to the disability issue, I don't believe that sufficient evidence was presented on the record to meet the Munoz and Lewis standards that this court has decided of severity, frequency, and duration of the disability. I understand where the court's going, I heard Judge Jordan. It's one thing to say, again, I speak only for myself, and I understand your position, but we're at summary judgment, and the question is not whether she has made out her case, but whether or not, based on the evidence presented, a jury could decide in her favor, and I know your position is for those reasons and those factors, she can. But she has Parkinson's, that part is undisputed, right? Absolutely, she has a medical condition. It's also undisputed that she has had difficulty walking on certain occasions, and it's undisputed that she has doctor's notes and records indicating that difficulty, right? Correction. Nuance, the first part is correct. She testified to two times difficulty walking. If you look at the doctor's note carefully, it never mentions walking. It says if she's forced to sit for a prolonged period. I didn't mean walking, I'm sorry. That's all right. The doctor's note about her inability to do something for long periods of time, like be on a cross-country flight. Again, disagree, Your Honor. He did not say, the doctor did not say she could not be on a long distance flight at all. What did the doctor say? He said that if she's forced to sit for an extended period of time, which right there, and I just flew down here, I got up and walked around the cabin, so you're not forced to sit. But if she's forced to sit for an extended period of time, that's part one. Part two is she'll be more stiff and slow. Those are his words. Not that she can't walk, not that she'd be- There are a number of reasons, not just because maybe there's turbulence in the- Sure. Flight attendants say you can't get up, but maybe you're sitting next to someone who has difficulty getting up, and you're in the inside row, and you can't do anything about that. I mean, you don't really have control over those things when you fly. It's possible. Parkinson's is also a degenerative condition. That is, it's not going to get better, right? And if she's having trouble walking now, it's only going to get worse over time. Well, to be honest, I think that's speculation. I mean, what period of time and- I think that most Parkinson's patients would love to hear that that's speculation. No, it's speculation in terms of what period of time I meant. Not that it's not chronic or degenerative, but at what point in time will that occur? There's certainly fabulous and remarkable stories about people with Parkinson's being able to be fully engaged in, in this case, walking. And, you know, I'll confess to the court, I didn't initially think that this argument would be one I would bring. I thought the same thing Your Honor did about Parkinson's. But then I looked at this court's precedents and realized, it isn't, do you have a medical condition that is scary, that's troubling, that's difficult? It's, is there evidence, factual evidence on the record of the frequency, the severity, and the duration of the impediment caused by that disease such that it constitutes a substantial limitation of a major life activity? And both Munoz and Lewis granted summary judgment, appelled summary judgment, when that evidence wasn't presented. And the evidence here is there were two occasions when she had difficulty walking. I submit to the court, that's not enough to meet that standard. As Judge Jordan, you mentioned earlier, the district court did not adjust the or reach the undue hardship, which is really the third argument here. I think it, in a way, is covered and overlapped by the issue of the pull forwards, the surveys that had to be pulled forward. I would submit to the court that it was an undue hardship on the employer, its customers, to require them basically to not get the benefit of their bargain, of a three-year certification, and to have to do those surveys two or three or even more months before they were due, in addition to requiring the other surveyors to make those. This is a matter of general information. If a customer has a three-year certification, that let's say the certification runs out at the end of October of 2023, in the normal course of events, when does the surveyor have to go up to renew the certification? Well, it shows October of, if it runs out in 23, October of 23. So they try to get as close to that date as they can. Yes, as close as they can. And that's, I think, what Ms. Hill said. Sometimes we'll get them out there a month before, and yes, sometimes even two. But for Ms., for the plaintiff, Ms. Hill was having to bring them forward even more than they, on occasion. All right. Thank you very much. Thank you very much. Your Honor, you will find the doctor's letter on DE38-1, where he says that the doctor explained that after seven years of Parkinson's disease, plaintiff is and will continue to have limits and special accommodations needed for work. He then continued that although she was being treated with medication, her disease tends to progress relentlessly. And because of plaintiff's Parkinson's disease, she will become stiff and more slow if she is forced to sit for a prolonged period of time. For this reason, he encouraged travel to be limited to the eastern and central United States. And the other thing is that, yes, there are two cases that deal with whether punctuality is an essential function. And one says, yes, it is. And the other one says, no, it isn't. So obviously, it's a question of just judging, or the court judging for itself, whether it's an essential function. And what we have here is the district court first weighed the factors and said, consider that she considered nationwide travel an essential function, because the job description said that the employer considered nationwide travel to be essential. I think we've already covered the fact that the job description says that they service organizations throughout the United States, and that extensive travel is required. But basically, the job description tends to deal with how you conduct the surveys and what the survey should show. Not so much, you know, you have to get on a plane. So the other, so the written job description could go either way as to whether it says nationwide travel or not. And even if you do interpret it to mean that, that's something that's given a substantial weight, but it's not dispositive. The other, the next factor is the amount of time that's spent on surveys which require nationwide travel, which sort of come up with approximately 50-50 in the past. But now, we don't know what would happen now that her Parkinson's is progressing. And of course, a lot of this 50% of the time that she went to California was before her disability developed to the point. No, but it seems to me that in making that argument, you're sort of conflating the accommodation with the essential function. Oh, okay. What I'm saying? You're saying that although she traveled approximately 50-50 East Central versus West, that may not be the same going forward because of her disability now. Correct. That's because of an accommodation and disability. It doesn't address whether or not nationwide travel is an essential function of the job. And 50-50 travel seems to me to pull against you as opposed to for you. Well, I'm saying the 50-50 travel before she received an accommodation. Yes, you're right, Your Honor. Then she would say, well, then she should be able with an accommodation to still do 50-50. The problem here is that the accommodation that she needs limits her ability to travel. And so, yes, I get that completely. If nationwide travel is an essential function, then there is not an accommodation that she saw. There might be another accommodation, but we haven't discussed anything further. She asked to be limited. Well, why don't you look at, in the abstract, why doesn't a court look at essential function without factoring in the disability? Well, I guess it would. You have to decide, was nationwide travel an essential function of her job? Without considering her disability. Correct. Because the accommodation... She was traveling 50-50 and they had customers all over the country? Yes. So why isn't the answer relatively simple against you? Well, because now she can still perform this function as a surveyor. It's just that she's saying it's difficult and she needs an accommodation. I know, but you're answering the essential function question by going to accommodation. No, I'm saying that if you think that it's an essential function... Yes. You've taken the second factor that she... You've taken the factor as the... No, I've taken all the factors. Okay. And if I think it's an essential function, then that's the end of... And she cannot do it without the... And she cannot perform her duties without an accommodation. And she can't. On this record, she can't because... No, she's saying that she cannot travel to California. Yes. On this record, she can't. But that's what we have to decide. Is the fact that several of the factors do indicate that it was an essential function, but then there are others... Says the fact that... That they've never made that contention. Oh, and before I forget, Diane Hill testified that she was in charge of 90 different surveyors. In other words, she was allocating surveys to 90 different people. And so the experience of past and current employees, they do have... I would assume the same thing as Ms. Topol. 50% were going to California, 50% of their time or whatever, if California was the busiest area for... Doesn't that cut against you? Everybody is traveling 50-50 everywhere? Well, I don't know because we don't really have the exact amount. I'm just saying, speculating that if that was her experience, that that maybe was the experience for other people. We don't know. Nobody put evidence about that in the record? Nobody took a 30B6 deposition to ask the corporate representative, how many surveyors do you have? To go back to Judge Rosenbaum's question and where are those people traveling and how many of them have limited travel to one zone or another? There's nothing like that in the record? There's... The one question about how many had limited travel besides Ms. Topol was Mr. Diaz. And he also was... They had him for six months when he had moved to Florida, and then they were limiting him to travel just in and around Florida. We have that on the record, so that answers the one question. We know that Ms. Hill had 90 surveyors that she was allocating surveys to. So can I ask you a couple of questions about that just to clarify? Sure. With Mr. Diaz, that was also just a six-month accommodation, right? Correct. Okay. And with respect to the 90 surveyors, do we know that all 90 of those surveyors had the exact same job with respect to home healthcare as your client? Do we know that from the record? From the record, I was not able to tell from Ms. Hill's testimony whether they were all home healthcare surveyors or if they were also in a different category. She seemed to be just concentrating on the home healthcare surveyors that Ms. Topol was. So I cannot give you a definitive answer, Your Honor. I appreciate your candor. If we can't tell whether she's talking about all surveyors or just surveyors who have the same job as Ms. Hoppel, doesn't it seem like it becomes hard for us to be able to use that for any purpose? Yes, Your Honor. And one other clarification I'd like to make. She never indicated that there was a problem allocating surveys to those 90 people that she was in charge of. And I will say as far as Ms. Hoppel and almost everybody else that Ms. Hill was surveying, they all do two weeks at a time. But it doesn't necessarily have to be two consecutive weeks. It's just two weeks out of the month. And it could be the first and third week, or it could be the first and second week, or the second and third. Any combination, as long as they're doing two weeks, they're available for two weeks out of every month to be allocated a survey. So I think that came up before one of the questions you all asked my worthy opponent. And my time has long expired. I want to thank you all for your time and request that you consider the fact that essential function could be in dispute. And therefore, summary judgment should be reversed. All right. Thank you both very much.